UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM SCROGGINS,<br>RICHARD WILSON,<br><br>     Plaintiffs,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.,<br>RASIER, LLC,<br><br>     Defendants. | No. 1:16-cv-01419-SEB-MJD |

**ORDER ON MOTION TO COMPEL ARBITRATION**

This matter is before the Court on Defendants' *Motion to Compel Putative Opt-In Plaintiff Richard Wilson to Arbitration and Dismiss Him From This Action*. [Dkt. 55.] The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion. For the reasons set forth below, this action is stayed as to Plaintiff Wilson's claims only, pending arbitration.[1]

### I. Background Facts

Opt-in Plaintiff, Richard Wilson, is an Indiana resident who worked as an Uber driver. At the heart of this case is Plaintiffs' contention that Uber misclassifies its drivers as independent contractors rather than employees resulting in the violation of wage payment laws. Plaintiff Scroggins brought this diversity action on behalf of himself and all other similarly situated persons working as drivers in this district for Defendant Uber Technologies, Inc.

---

[1] This Order is limited to the claims of putative opt-in Plaintiff Richard Wilson. Defendants do not seek to compel Plaintiff William Scroggins to arbitration because he opted out of the Arbitration Provision.

1

Uber Technologies is a technology company that offers a smartphone application to connect riders looking for transportation to drivers. Defendant Raiser LLC is a wholly owned subsidiary of Uber Technologies (Defendants hereinafter collectively referred to as "Uber"). Customers use their smartphones to request rides through the Uber app. The request is routed to the locally-available Uber drivers, who use their own vehicles to pick-up and transport customers. The customer pays through the Uber app and the driver is paid directly by Uber for a portion of the fare collected from the customer.

Prior to using Uber's software to generate leads for riders, potential drivers must enter into the Technology Services Agreement (the "Agreement").[2] To enter the Agreement, Wilson had to sign into the Uber app and click the appropriate hyperlink. The Agreement is then presented on the screen and can be reviewed in its entirety by scrolling. There is no time limitation to review the Agreement. To advance past the "Agreement" screen, the driver must first click "YES, I AGREE" and then click "CONFIRM." After confirming his acceptance of the Agreement, it is automatically transmitted to Plaintiff's personal Driver Portal, where he could review it or print it at any time.

> The Agreement contains an Arbitration Provision, which provides, in relevant part:
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**
>
> Except as provided in Section 15.3(v) below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to

---

[2] Uber periodically revises its agreements and its drivers must assent to those revised versions to receive continued access to the app. The Agreement cited here is the most recent Agreement between the parties.

interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

[Dkt. 56-1 at 52 (emphasis in original).][3]

Once a driver accepts the Agreement, he may still opt out of the Arbitration Provision. The Agreement provides:

> Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g. UPS, Federal Express, etc.) or by hand delivery . . .

[Dkt. 56-1 at 56.]

Wilson did not opt out of the Arbitration Provision. Uber now moves to compel the arbitration of Wilson's claims.[4]

## II. Discussion

Plaintiff does not dispute that he accepted the Agreement and did not opt out of the Arbitration Provision. Rather, he argues that the class action waiver included in the Arbitration Provision violates the National Labor Relations Act ("NLRA") and the Norris-LaGuardia Act ("NLGA") and therefore renders the Arbitration Provision unenforceable. The December 2015 Agreement, unlike prior versions of the Agreement, contains a "carve out" from the delegation clause for disputes regarding the class action waiver. These disputes must be resolved by a court,

---

[3] Although the Arbitration Provision begins on page 14 of the Agreement, potential drivers are advised of the Provision and their ability to opt-out at the bottom of page one in a paragraph printed in **bold-faced, ALL CAPS**.
[4] Similar cases between Uber and its drivers have been filed in numerous courts across the country. Significantly, every federal district court with the exception of one in the Northern District of California has granted Defendants' motions to compel arbitration for plaintiffs who did not opt-out of the Arbitration Provision. The rogue California district court recently was reversed by the Ninth Circuit in *Mohamed v. Uber Technologies, Inc.*, 2016 WL 4651409 (9th Cir. 2016).

3

not an arbitrator. [Dkt. 56-1 at 54.] Therefore, the validity of the class action waiver is properly before this Court and Wilson's arguments will be addressed in turn below.

### A. National Labor Relations Act

Wilson first asserts the Arbitration Provision is unenforceable because it contains a class action waiver that violates Sections 7 and 8 of the National Labor Relations Act. In support of this proposition, Wilson relies upon *Lewis v. Epic Systems*, wherein the Seventh Circuit held that a class action waiver rendered an arbitration provision unenforceable because it interfered with employees' Section 7 right to engage in concerted activity. 823 F.3d 1147 (7th Cir. 2016). In *Lewis*, the employer sent to its employees via email an arbitration agreement mandating that wage and hour claims could only be brought through individual arbitration and that employees waived the right to collective action for such claims. Employees were deemed to have accepted the agreement if they continued working. In other words, employees had no option to decline or "opt-out" of the agreement if they wanted to keep their jobs. *Lewis*, 823 F.3d at 1151.

Wilson argues the Court should find the Arbitration Provision in this case to be unenforceable based upon *Lewis*. However, the Seventh Circuit expressly declined in *Lewis* to decide the effect of an opt-out clause, such as the one in this case, on the enforceability of a class action waiver. The Court stated, "[I]n our case, it is undisputed that assent to Epic's arbitration provision was a condition of continued employment. A contract that limits Section 7 rights that is agreed to as a condition of continued employment qualifies as 'interfer[ing] with' or 'restrain[ing] . . . employees in the exercise' of those rights." *Id*. at 1155.[5] In this case, Wilson

---

[5] The Court likewise believes *N.L.R.B. v. Stone*, referenced within *Lewis*, to be sufficiently distinguishable from this case to warrant a different result. 125 F.2d 752 (7th Cir. 1942). In *Stone*, employees were required (there was no opt-out available) by contract to bargain with their employer individually which the Court found to be a violation of the NLRA. The Court noted that "we do not think this provision can be legalized by showing the contract was entered into without coercion." *Id*. at 756. Neither *Stone* nor *Lewis* addressed the effect of a clear opt-out provision on the validity of a class action waiver, and the Court expressly declined to resolve that issue in *Lewis*.

4

was able to opt-out of the Arbitration Provision – including the class action waiver – even after he began driving for Uber. At any time within the first 30 days of accepting the Agreement, Wilson could have sent an email opting out of the Arbitration Provision, thereby preserving his right to pursue a collective action, as Plaintiff Scroggins did. But Wilson did not do so.

Wilson next argues the Court should defer to the NLRB's decision in *On Assignment Staffing*, wherein the Board found a voluntary class waiver violated the NLRA. 2015 WL 5113231. *rev'd per curiam*, *On Assignment Staffing Servs., Inc. v. NLRB*, No. 15-60642, 2016 WL 3685206 (5th Cir. June 6, 2016). While Wilson notes that two district courts and a bankruptcy court (none from within the Seventh Circuit) have deferred to the NLRB's opinion on this issue, the Court also notes that *On Assignment Staffing* was summarily reversed by the Fifth Circuit. Given that the Seventh Circuit expressly declined to resolve the issue of the opt-out provision in *Lewis* without referencing *On Assignment Staffing*, the Court declines to defer to that reversed Board decision here.

### B. Norris-LaGuardia Act

Finally, Wilson argues that the Norris-LaGuardia Act prohibits the enforcement of class action waivers. The NLGA, enacted three years before the NLRA, restricts the power of federal courts to issue injunctions to prohibit certain activities. Specifically, it prohibits two types of agreements: (1) one in which a person promises not to join a labor union; and (2) one in which a person promises to withdraw from a labor union. *See* 29 U.S.C. § 103. An agreement to arbitrate is not covered by the NLGA. *See Morvant v. P.F. Chang's Bistro, Inc*., 870 F. Supp. 2d 831, 844 (N.D. Cal. 2012). Therefore, the NLGA does not render the class action waiver, or the Arbitration Provision, unenforceable.

### III. Conclusion

Based on the foregoing, Defendant's *Motion to Compel Putative Opt-In Plaintiff Richard Wilson to Arbitration and Dismiss Him From This Action* [Dkt. 55] is **GRANTED IN PART** and **DENIED IN PART**. The motion to compel individual arbitration is granted and this matter is stayed as to Wilson only pending resolution of the arbitration proceeding. The motion to dismiss is denied, as the Seventh Circuit has held repeatedly, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008).

The parties are directed to notify the Court within 14 days of the issuance of any arbitration award or other action that terminates the arbitration proceedings.

Dated: 26 JAN 2017

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.